# In the United States Court of Federal Claims

No. 24-1132
Filed: November 27, 2024
Re-issued: December 5, 2024[1]

|  |  |
|---|---|
| PRIME PHYSICIANS, PLLC, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| *Defendant*, | ) |
| and | ) |
| TRIBAL HEALTH, LLC, | ) |
| *Defendant-Intervenor*. | ) |

*W. Brad English*, Maynard Nexsen PC, Huntsville, AL, for Plaintiff Prime Physicians, PLLC. *Emily J. Chancey*, *Taylor R. Holt*, and *Hunter M. Drake*, of counsel.

*Nathanael B. Yale*, Trial Attorney, United States Department of Justice, Civil Division, Washington, D.C., with whom was *Steven J. Gillingham,* Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, for Defendant. *Terrius D. Greene*, Senior Attorney, Office of the General Counsel, General Law Division, U.S. Department of Health and Human Services, *of counsel*.

*Ryan S. Spiegel*, Thompson Hine LLP, Washington, D.C., for Defendant-Intervenor. *Edward DeLisle*, *of counsel*.

## OPINION AND ORDER

**MEYERS, Judge**.

Congress has vested the Government Accountability Office ("GAO") with exclusive jurisdiction to hear bid protests that arise "in connection with" the "issuance" of a task order. 41

---

[1] The court initially filed this Opinion and Order under seal to allow the parties to propose redactions. The parties did not submit any proposed redactions. ECF No. 51.

U.S.C. § 4106(f).  This has long been understood to broadly bar this court from adjudicating bid protests involving task orders.  In this case, however, the question is not whether this court has jurisdiction over a protest challenging the issuance of a task order; rather, the question here is whether this court has jurisdiction to hear a protest challenging a voluntary corrective action that the agency chose to take in response to a bid protest challenging the issuance of a task order filed at the GAO.

In this case, a disappointed bidder—Tribal Health, LLC—filed a protest at the GAO challenging the lawfulness of a task order that the Indian Health Service ("IHS" or "the Agency") awarded to Prime Physicians, PLLC.  All agree that the GAO had exclusive jurisdiction to hear this protest.  According to Tribal Health, the task order issued to Prime Physicians differed materially from the terms of the Agency's solicitation.  Upon reviewing the protest, the Government agreed and chose to take corrective action so that it could clarify its needs and award a new task order.

In its complaint, Prime Physicians alleges that there was nothing wrong with the terms of its task order and asks the court to enjoin the corrective action.  In essence, Prime Physicians has taken its defenses to Tribal Health's GAO protest and filed them as an affirmative claim here.  Because this protest turns upon the lawfulness of the terms of a task order that the Government awarded, it arises in connection with the issuance of that task order and this court lacks jurisdiction to hear it.  Therefore, the court grants the Government's and Tribal Health's motions to dismiss.

**I.     Background[2]**

On June 12, 2024, the IHS issued a task order request for proposals (the "RFP") for "around-the-clock, year-round emergency department management and staffing services for the Pine Ridge Hospital Emergency Department (ED) in Pine Ridge, South Dakota."  ECF No. 26 at 2; *see* Tab 3 at AR257.[3]  The RFP sought proposals for contractors to provide personnel to staff the ED.  *Id.*  Specifically, the awardee would provide "ED Directors, ED Physicians, Advanced Practice Providers, ED Nurse Leads, Registered Nurses, and Medical Support Assistants to provide comprehensive medical and related services for patients."  *Id.* at AR270 (cleaned up).  The awardee would be responsible for providing staffing for the ED 24 hours per day, seven days per week, for 365 days.  *Id.*[4]

As will become clear, the issues with this procurement spring from the fact that the RFP called for the awardee to begin staffing the ED on July 1, 2024.  This short timeframe (19 days from RFP issuance to start of performance under a competitively awarded task order) did not

---

[2] Because this case turns on a jurisdictional question, the court provides a limited background addressing only those facts that are necessary to the court's decision.

[3] The RFP used "ED" as an abbreviation for the "Emergency Department" at Pine Ridge Hospital.  The court does so as well.

[4] While the awardee would need to staff the ED 24 hours per day, not every position required 24-hour coverage.

allow enough time for an awardee other than the incumbent to complete the required vetting process for its personnel before the required start of staffing.

The parties' dispute in this protest revolves around when the awardee would need to start staffing the ED. The RFP initially called for a period of performance from the date of award to June 30, 2025. Tab 3 at AR258. But it separately required the awardee to provide staffing for the ED from July 1, 2024, to June 30, 2025. *Id.* In amendment 1, the Agency changed the period of performance to November 1, 2024, to June 30, 2025. Tab 4 at AR314. But in amendment 2, the Agency reverted to having the period of performance run from July 1, 2024, to June 30, 2025. Tab 5a at AR329. The amended RFP also maintained the same period of staffing from the original RFP, requiring staffing from July 1, 2024, to June 30, 2025. *Id*. at AR331.

IHS awarded the task order to Prime Physicians on Friday, June 28, 2024. Tab 14 at AR2411. In other words, the Agency made the task order award on the last business day[5] before staffing was set to start on Monday, July 1, 2024. This proved problematic.

The RFP required that all personnel had to satisfy credentialling and privileging requirements before they began staffing the ED. Tab 3 at AR282. To do this, the awardee had to submit documents "not less than 45 days prior to the provider's anticipated orientation or first shift, whichever is first." *Id.* This was not possible to complete over a weekend. IHS recognized this and turned to Tribal Health, the incumbent contractor whose personnel were already eligible to staff the ED on July 1, 2024.

On June 29, 2024, the contracting officer determined that "[a] Task Order must be issued in [the] interim to ensure a safe transition from the incumbent Tribal Health to Prime Physicians." Tab 12 at AR2399. Therefore, IHS issued Tribal Health a three-month, sole source task order to provide ED staffing until Prime Physicians could complete the credentialling and privileging processes. *Id.*; Tab 26 at AR3137-42. And the IHS issued Prime Physicians a task order with a period of performance from July 1, 2024, to June 30, 2025 (the dates from the original task order RFP). Tab 13a at AR2402-03. But Prime Physician's task order provides that *shift coverage* would not begin until October 1, 2024. *Id.* Because Prime Physicians would only provide nine months of shift coverage rather than twelve, its task order's price was reduced 25% from Prime Physicians' proposed price. *Id.* at AR2408.

After the changes to Prime Physicians' task order, Tribal Health filed a protest at the GAO. According to Tribal Health's protest, the Agency had "altered key terms and elements of the solicitation without following the mandates of applicable regulatory provisions," when it changed the staffing period for Prime Physicians' contract. Tab 22 at AR2889-90. After reviewing the GAO protest, IHS acknowledged errors in the procurement. Specifically, the Agency found the task order improper because it included a three-month transition period despite the RFP requiring ED staffing to start on July 1, 2024 (with no transition period). Tab 25 at AR3135. The Agency chose to undertake corrective action that would include terminating Prime Physicians' task order, reconsidering the need for a transition period, accepting new proposals,

---

[5] It appears that the notice was sent after the close of business. Tab 14 at AR2409 (email transmittal at 5:50 p.m.).

and making a new award decision. *Id.* at AR3136. Prime Physicians filed this protest seeking to enjoin the corrective action.

## II.  Standard of Review

Subject-matter jurisdiction is a threshold requirement that must be determined at the outset of a case. *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010). The plaintiff "bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citation omitted). When deciding a Rule 12(b)(1) motion, the court "must accept as true all undisputed facts asserted in the . . . complaint and draw all reasonable inferences in favor of the [non-movant]." *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016) (internal quotation marks omitted) (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)). If the court determines that it lacks jurisdiction, it must dismiss the case. *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## III.  Discussion

### A.  This court lacks jurisdiction over Prime Physicians' protest.

Congress granted this court "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). But Congress has vested exclusive jurisdiction over some protests elsewhere. As relevant here, the Federal Acquisition Streamlining Act of 1994 ("FASA") bars all protests of task orders under $10 million and provides the Government Accountability Office ("GAO") exclusive jurisdiction over protests "in connection with the issuance or proposed issuance of a task or delivery order" valued over $10 million. 41 U.S.C. § 4106(f)(1).[6] This task order exceeds $10 million. Because Prime Physicians is an interested party (it is the awardee of a task order that the Agency is terminating as part of its corrective action), the resolution of the Government's motion turns on whether this protest is in connection with the issuance of a task order. It is.

This is not the first time that a party has sought to avoid the FASA jurisdictional bar by arguing that the protest is of a corrective action rather than the issuance of a task order. Like the plaintiff in *Mission Essential Personnel, LLC v. United States*, 104 Fed. Cl. 170, 178 (2012), Prime Physicians challenges a corrective action the Government chose to take regarding a task order award. In its corrective action memo, the Agency acknowledged that were "errors in the procurement" because of the inclusion of a three-month transition phase in Prime Physicians'

---

[6] FASA provides a separate bar for protests involving the Department of Defense codified at 10 U.S.C. § 3406(f), which bars protests of task orders valued up to $25 million. Because this procurement does not involve the Department of Defense, the FASA bar in Title 41 applies.

task order, which was not provided for in the RFP.  Tab 25 at AR3135-36.  Again, the RFP called for the awardee to begin staffing the ED on July 1, 2024, not October 1, 2024.  Tab 5a at AR329, AR331.  Thus, the corrective action was necessary in the Government's view.

Like Prime Physicians, Mission Federal sought to avoid the FASA bar by arguing that it was merely challenging the Agency's "corrective action, not the not the issuance of the task orders."  *Mission Essential*, 104 Fed. Cl. at 178.  But the "question before the court . . . is not whether Mission Essential's protest challenges the issuance of a task order, but rather whether its protest is 'in connection with' the issuance of a task order."  *Id.* at 178 (quoting 10 U.S.C. § 2304c(e)(1)).  The court concluded that the corrective action was in connection with the issuance of a task order because it addressed shortcomings with the task order itself that had been awarded.  *Id.* at 179.  The same is true here—Prime Physicians has effectively taken its defenses to Tribal Health's GAO protest (that this court lacked jurisdiction to hear) and turned them into an affirmative protest of the corrective action.  In other words, Prime Physicians' protest turns on the lawfulness of the terms of a task order—i.e. whether the Agency awarded a task order that complied with the terms of the RFP.  That is simply the other side of the same coin as Tribal Health's protest and fits squarely within the FASA bar.

Similarly, in *Nexagen Networks, Inc. v. United States*, the court again addressed a protest of an agency's corrective action.  *Nexagen Networks, Inc. v. United States*,124 Fed. Cl. 645 (2015).  There, the court stated simply that it lacked jurisdiction over the challenges to the corrective action because "FASA prohibits a plaintiff from bringing a challenge to the issuance, or proposed issuance, of a task order in this Court, unless the challenge is based upon the ground that the task order would increase the scope, period, or maximum value of the underlying contract."  *Id.* at 653 (citing *Mission Essential*, 104 Fed. Cl. at 178-79).  Relying on *Mission Essential*, the court concluded that no FASA bar exception applied: "This is not a challenge that falls within the specific excepted allegations of excessive scope, period or value of the task order as required under FASA."  *Id.* at 653 (citing *BayFirst Sols., LLC v. United States*, 104 Fed. Cl. 493, 502 (2012)).

The Federal Circuit also squarely held that the FASA bar is broad in its scope.  In *SRA International, Inc. v United States*, the Federal Circuit explained that "[t]he statutory language of FASA is clear and gives the court no room to exercise jurisdiction over claims made 'in connection with the issuance or proposed issuance of a task or delivery order.'"  *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014) (quoting 41 U.S.C. § 4106(f)(1)).  And the circuit went further:

> Even if the protestor points to an alleged violation of statute or regulation, as SRA does here, the court still has no jurisdiction to hear the case if the protest is in connection with the issuance of a task order.  We acknowledge that this statute is somewhat unusual in that it effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order—perhaps even in the event of an agency's egregious, or even criminal, conduct.  Yet Congress's intent to ban protests on the issuance of task orders is clear from FASA's unambiguous language.

*Id.*  And *SRA* concluded that the FASA bar applied to all three prongs of 28 U.S.C. § 1491(b)(1). *Id.* at 1412-13.

In *Tolliver Grp., Inc. v. United States*, the Court of Federal Claims adopted a slightly different reading of the FASA bar.  In that case, the court focused its analysis on the third prong[7] of 28 U.S.C. § 1491(b)(1), stating that "Plaintiffs sufficiently have alleged '[a] violation of statute or regulation in connection with a procurement or a proposed procurement.'"  *Tolliver Grp., Inc. v. United States*, 151 Fed. Cl. 70, 85 (2020) (alteration in original) (quoting 28 U.S.C. § 1491(b)(1)).  According to *Tolliver*, the FASA bar did not ever reach this prong of 28 U.S.C. § 1491(b)(1).  Rather, the court held that the FASA bar applied only to the first two prongs: "the Court returns to the statutory language of the FASA task order protest bar, and concludes that it applies, by its plain terms, only to the first [two] causes of action identified in § 1491(b)(1), where CICA's definition of 'protest' and the Tucker Act overlap."  *Id.* at 97.  But *Tolliver* concluded that "an action under the last prong of § 1491(b) is not a 'protest' because it is not a challenge to a solicitation or to the proposed award or award of a contract. . . . Accordingly, § 1491(b)(1) must be construed to permit a cause of action which is neither a 'protest' of a solicitation, nor of a contract award (or proposed award)."  *Id.* at 98.

The Federal Circuit did not agree.  In *22nd Century Technologies, Inc. v. United States*, 57 F.4th 993, 999 n.3 (Fed. Cir. 2023), the circuit rejected arguments based on *Tolliver*'s conclusion that the FASA bar did not apply to any claim under the third prong of 28 U.S.C. § 1491(b)(1).  Reaffirming *SRA*'s broad reading of the FASA bar, the Federal Circuit found that *Tolliver*'s categorical holding that the FASA bar never applied to cases brought under the third prong of 28 U.S.C. § 1491(b)(1) was "foreclosed by *SRA International*, which held that FASA reached protests brought under § 1491(b)(1)—including those brought under the final prong—as long as the protests are 'in connection with the issuance or proposed issuance of a task or delivery order.'"  *Id.* at 999 n.3 (quoting *SRA*, 766 F.3d at 1413).  In other words, *22nd Century* concluded that the FASA bar applies to *all* prongs of 28 U.S.C. § 1491(b)(1), so long as the protested action was in connection with the issuance or proposed issuance of a task order.  As a result, *Tolliver*'s holding that the FASA bar never applies to protests under the third prong of 28 U.S.C. § 1491(b)(1) was overbroad.

Under these cases applying the plain terms of the FASA bar, this court lacks jurisdiction to hear Prime Physicians' protest because its challenge to the corrective action turns on the lawfulness of the language of a task order.

**B.   The Federal Circuit's decision in *Percipient.ai* does not change the analysis in this case.**

---

[7] In *Tolliver*, the court divided the jurisdictional language of 28 U.S.C. § 1491(b)(1) into four prongs, whereas *SRA* divided the language into three prongs (*Tolliver* split *SRA*'s second prong into two separate prongs, creating four total).  *Compare Tolliver Grp., Inc. v. United States*, 151 Fed. Cl. 70, 85 (2020), *with SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1411 (Fed. Cir. 2014).  This court adopts the Federal Circuit's three-prong framework because it is the one used in most cases.

The FASA bar recently returned to the Federal Circuit in *Percipient.ai, Inc. v. United States*, 104 F.4th 839 (Fed. Cir. 2024), *reh'g granted and vacated*, No. 2023-1970, 2024 WL 486637 (Fed. Cir. Nov. 22, 2024).  According to Prime Physicians, *Percipient.ai* allows it to maintain its protest.  *See* ECF No. 24 at 9-11.

In *Percipient.ai*, the National Geospatial-Intelligence Agency ("NGA") awarded a single IDIQ contract to CACI-Federal ("CACI") along with a task order under that IDIQ contract. *Percipient.ai*, 104 F.4th at 844.  During task order performance, Percipient.ai sought to be a subcontractor to CACI to provide its commercial product to satisfy a portion of the task order's requirements.  *Id.* at 844-45.  Although the NGA and CACI agreed to evaluate Percipient.ai's product, the protest alleged that the NGA's and CACI's refusal to adopt its product in favor of CACI developing its own violated a statutory requirement to utilize commercial products rather than developing them from scratch.  *Id.* at 846 (citing 10 U.S.C. § 3453(a)).

Faced with these specific facts, the Federal Circuit relied heavily on FASA's text and what constitutes a protest brought "in connection with" the "issuance" of a task order.  The Federal Circuit concluded that "[c]onsistent with the statutory focus on 'issuance' and this court's decision in *SRA International, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014), we interpret this language to mean that a protest is barred if it challenges the issuance of the task order directly or by challenging a government action (*e.g.*, waiver of an organizational conflict of interest) whose wrongfulness would cause the task order's issuance to be improper." *Id.* at 847.  Thus, when "[r]ead in context, we understand *SRA*'s reference to 'directly and causally connected to issuance of [a task order]' to refer to government action in the direct causal chain sustaining the issuance of a task order, not to all actions taken under or after issuance of a proper task order."  *Id.* at 850.  The Federal Circuit then determined that Percipient.ai's challenge, which it brought several years after task order award, was not "in connection with" the "issuance" of a task order—it was a challenge alleging the violation of a procurement statute in connection with a procurement.  *Id.* at 849, 852.  Thus, the Federal Circuit concluded that the FASA bar did not apply and that 28 U.S.C. § 1491(b)(1) provided this court with jurisdiction over Percipient.ai's claim.  *Id.* at 851-52.

The Federal Circuit thus held that this court has jurisdiction over *some* cases brought under the third prong of 28 U.S.C. § 1491(b)(1) that the FASA bar does not reach.  This does not mean that this court has jurisdiction over all (or even many) claims under the third prong of 28 U.S.C. § 1491(b)(1).  As relevant here, *Percipient.ai* itself makes clear that the FASA bar applies when a protest challenges the terms of a task order:

> Our decision in *22nd Century Technologies, Inc. v. United States*, 57 F.4th 993 (Fed. Cir. 2003), is consistent.  There, we affirmed the Court of Federal Claim's holding that the task order bar applied "because 22nd Century's challenge is to the alleged failure of the task order to require bidders to recertify as small businesses."  The challenge was to the language of the task order itself.

*Id.* at 851 n.6 (internal citation omitted) (quoting *22nd Century*, 57 F.4th at 999-1000).  The same is true here.  Prime Physicians' protest alleges that the corrective action designed to correct what the Agency and Tribal Health view as problems with a task order's terms is irrational

because there is nothing wrong with the terms of the task order. But this argument is no different than Tribal Health's argument before the GAO because they both turn on the specific terms of the task order, meaning that the FASA bar applies even under *Percipient.ai*.

To say that *Percipient.ai* caused a stir would be an understatement. *See, e.g.*, Dan Ramish, Jonathan Shaffer & Tara Hopkins, *Federal Circuit Percipient Government Contract Ruling is Groundbreaking*, Law360 (July 2, 2024, 6:08 PM), https://www.law360.com/articles/1851592/fed-circ-percipient-gov-t-contract-ruling-is-groundbreaking. That said, it has not resulted in the sea change that Prime Physicians understands it to. In a protest addressing arguments very similar to this one, Judge Smith found that the FASA bar applied to protests seeking to set aside a corrective action relating to a task order. *Comput. World Servs. Corp. v. United States*, No. 24-1095, 2024 WL 4562850, at *3 (Fed. Cl. Oct. 21, 2024). As he put it, "*Percipient.ai* is not the watershed moment" that plaintiffs make it out to be. *Id*. Rather, outside of the narrow factual circumstance present in *Percipient.ai*, the prior precedents barring this court from hearing protests in connection with the issuance of a task order still apply. And this is another reason that this case does not fit within *Percipient.ai*—Prime Physicians does not allege any violation of a procurement statute in connection with this procurement.

Finally, since oral argument, the Federal Circuit has agreed to hear *Percipient.ai* en banc and vacated the panel decision. *Percipient.ai, Inc. v. United States*, No. 2023-1970, 2024 WL 4866637, at *1 (Fed. Cir. Nov. 22, 2024). Given that this court lacks jurisdiction over this protest even under *Percipient.ai*, the fact that the Federal Circuit has vacated the panel decision and is hearing *Percipient.ai* en banc does not change anything. And it appears that the panel's holdings regarding the FASA bar and the scope of 28 U.S.C. § 1491(b)(1)—the only issues relevant to this case and which this court has applied here—will be reaffirmed en banc. The order granting en banc review provides that "[t]he court *will not revisit* and does not require additional briefing on the issues of task bar under the Federal Acquisition Streamlining Act of 1994 (FASA), 10 U.S.C. § 3406(f) [or] subject matter jurisdiction under 28 U.S.C. § 1491(b)(1)." *Id.* (emphasis added).

**IV.    Conclusion**

For the foregoing reasons, the court:

1. GRANTS the Government's motion to dismiss for lack of subject-matter jurisdiction, ECF No. 26;

2. GRANTS Tribal Health, LLC's motion to dismiss for lack of subject-matter jurisdiction, ECF No. 25;

3. DENIES Prime Physicians, PLLC's motion for judgment on the administrative record, ECF No. 24;

4. DENIES-AS-MOOT Prime Physicians, PLLC's motion to supplement the administrative record, ECF No. 30; and

5. DIRECTS the Clerk's Office to enter judgment accordingly.

It is so ORDERED.

<u>s/ Edward H. Meyers</u>  
Edward H. Meyers  
Judge